[No. B095107. Second Dist., Div. Six. Nov. 14, 1995.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SAN LUIS OBISPO COUNTY,
Respondent;
JAMES JUMP, Real Party in Interest.

COUNSEL

Barry T. LaBarbera, District Attorney, and John Trice, Deputy District Attorney, for Petitioner.

James B. Lindholm, Jr., County Counsel, and John Paul Daly, Deputy County Counsel, for Respondent.

Michael J. Adams, Public Defender, for Real Party in Interest.

OPINION

**STONE (S. J.), P. J.**—Here we hold that the superior court located within the county in which an inmate is convicted of the crime that serves as the foundation for his placement in a state hospital as a mentally disordered offender (MDO) is the proper court to hear a petition for involuntary treatment under Penal Code section 2970.[1] Thus, the prosecutor who obtains the conviction that results in the placement of a person in a mental hospital as an MDO bears the responsibility for seeking further commitment for involuntary treatment.

FACTS

In 1988, James Jump was convicted in the Los Angeles County Superior Court of having committed an assault. The court in that county sentenced him to state prison and he was placed by the authorities in California Men's Colony (CMC) in San Luis Obispo County. While imprisoned at CMC, he attacked a prison guard.

The San Luis Obispo County District Attorney filed a complaint charging Jump with assaulting a prison guard. (§§ 4501.5, 69.) In 1989, Jump pled no contest to resisting a prison guard. He was sentenced by the San Luis Obispo Superior Court to an additional term of 16 months in prison. This term was to be served consecutive to his Los Angeles County sentence.

In 1991, Jump was transferred by the authorities to Atascadero State Hospital. On July 21, 1991, the Department of Corrections certified him to be an MDO and ordered him to remain in custody as a condition of parole. (§ 2962.) Significantly, the certificate of MDO listed Jump's violation of section 69 (resisting an officer with force), the San Luis Obispo County crime, as the controlling offense for the commitment.

---

[1]Unless otherwise noted, all statutory references are to the Penal Code.

On September 24, 1992, the Board of Prison Terms (BPT) reaffirmed the necessity for Jump's treatment. On December 1, 1992, respondent superior court ordered Jump to remain in custody at Atascadero State Hospital.

On January 4, 1994, as a condition of his parole, the BPT recommitted Jump as an MDO. On November 8, 1994, respondent superior court granted the prosecution's petition for continued involuntary treatment. (§ 2970.)

On July 11, 1995, the San Luis Obispo County District Attorney petitioned respondent court for another year of involuntary treatment for Jump. (§ 2970.) Jump moved to dismiss the petition for lack of proper jurisdiction.

On August 1, 1995, respondent superior court granted the motion to dismiss. The court ruled that the section 2970 petition should be heard in the county of Jump's initial commitment—Los Angeles County. It concluded that section 3003, subdivision (a), manifested a "strong legislative policy to place the burden of further proceedings against prisoners and hospital patients on the original county of commitment rather than [the county] where the prisoner is held."[2]

The prosecution, lacking an adequate remedy at law, sought an extraordinary writ from this court. In its petition it argues that Jump was convicted of resisting a prison guard at CMC, and therefore, San Luis Obispo is the proper county of commitment. In support of this contention, the prosecution relies on the fact that the certificate of MDO listed the assault of the guard as the controlling offense for purposes of recommitment.

We granted an alternative writ of mandate. Upon its receipt of the writ, respondent superior court set aside the order dismissing the action. The matter is moot. However, all of the parties have requested that we consider the merits of the petition. Therefore, because of the recurring nature of the problem and because of the importance of the issue, we have decided to consider this matter. (*Green* v. *Superior Court* (1974) 10 Cal.3d 616, 621-622, fn. 6 [111 Cal.Rptr. 704, 517 P.2d 1168].)

## DISCUSSION

The MDO scheme is fundamentally penal. (*People* v. *Collins* (1992) 10 Cal.App.4th 690, 694 [12 Cal.Rptr.2d 768].) "MDO commitments are . . .

---

[2]Section 3003, subdivision (a) states: "Except as otherwise provided in this section, an inmate who is released on parole shall be returned to the county from which he or she was committed. [¶] For the purposes of this subdivision, 'county from which he or she was committed' means the county where the crime for which the inmate was convicted occurred and shall not be construed to mean the county wherein the inmate committed an offense while confined in a state prison facility or while confined for treatment in a state hospital."

necessarily related to the commission of and conviction and imprisonment for crimes involving [the] use of force or violence or in which serious bodily injury was inflicted . . . ." (*People* v. *Gibson* (1988) 204 Cal.App.3d 1425, 1433 [252 Cal.Rptr. 56].)

Section 2970 comes into play when the medical director of a state mental hospital believes that a parolee's "severe mental disorder is not in remission or cannot be kept in remission without treatment . . . ." In such instances "the medical director . . . shall submit to the district attorney of the county of commitment, his or her evaluation on remission . . . [¶] The district attorney may then file a petition with the superior court for continued involuntary treatment for one year." (§ 2970.)

The statute does not specifically state where the section 2970 hearing is to be held. However, the statute explicitly designates "the district attorney of the county of commitment" to represent the interests of the People of the State of California in these proceedings.

█ The district attorney is a county officer who is authorized by statute to prosecute those crimes committed within the geographic confines of his or her county. (Gov. Code, §§ 24000, 26500, 26502; *County of Modoc* v. *Spencer* (1894) 103 Cal. 498, 501 [37 P. 483]; see also *People* v. *Crise* (1990) 224 Cal.App.3d Supp. 1, 5 [274 Cal.Rptr. 242].) It is evident, therefore, that the Legislature intended that a section 2970 hearing be held in the same county as that of the office of the district attorney that prosecuted the crime that triggered the MDO proceeding.

In the usual case, the question of venue is not a problem because the prisoner suffers but a single conviction and such conviction serves as the triggering offense under section 2962.[3] The problem arises where there have been prosecutions that have taken place in two or more counties. In such instances, there is the possibility that either of the crimes may serve as a grounds to have the prisoner declared an MDO.

█ Jump contends that the situs of his initial commitment (Los Angeles County) is determinative of where the section 2970 hearing is to be held. It is his position that section 2970 proceedings are a continuation of treatment previously ordered as a condition of parole. (See *People* v. *Kirkland* (1994) 24 Cal.App.4th 891, 905-906 [29 Cal.Rptr.2d 863].) As such, Jump believes

---

[3]In order to commit a prisoner to the MDO program, the underlying crime must be one in which "the prisoner used force or violence, or caused serious bodily injury." (§ 2962, subd. (e).)

that the authorities are obliged to return an inmate to his initial place of commitment to state prison. (See § 3003, subd. (a).) This argument fails for two reasons.

First, section 3000, subdivision (a) applies to parolees. The parole period for the crime that Jump committed in Los Angeles expired on January 28, 1995. As such, he was entitled to an unconditional release for this charge. (§ 3001.) Jump was retained for involuntary treatment at Atascadero State Hospital after the expiration of his parole period because of his classification by the court as an MDO under section 2970.

Second, the term "county of commitment" is readily understood. ■ "If the language [of a statute] is clear and unambiguous there is no need for construction . . . ." (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) ■ Therefore, it is not necessary for this court to look elsewhere in the Penal Code for a definition.

In 1988, Jump embarked from Los Angeles County on a journey to the state prison system. Had he avoided any further criminal conduct of a violent or forceful nature, Jump would have been returned to his place of embarkation. (§ 3003, subd. (a).) However, while bound on that journey, he perpetrated an entirely new crime (the altercation with a prison guard) and performed his criminal act in a new county.[4]

At this juncture, the Office of the District Attorney of San Luis Obispo County came on board and steered a new course. In 1989, it filed the criminal proceeding that, following a plea, resulted in Jump's further *commitment* in prison.

In 1991, the Office of the District Attorney of San Luis Obispo County instituted the section 2962 petition that resulted in Jump's placement as an MDO in the Atascadero State Hospital. In its petition, Jump's 1989 conviction of having an altercation with a prison guard, was designated by the prosecution as the requisite offense. (§ 2962, subd. (b).)

Under these circumstances, we hold that the District Attorney of the County of San Luis Obispo was duly vested with the authority to initiate a section 2970 petition for the continued involuntary treatment of Jump and that the petition was properly filed in respondent superior court.

---

[4]The determination of the "county of commitment" was not a problem in *Kirkland*; the inmate in that case, although he was being treated in San Luis Obispo County, perpetrated both of his crimes in San Bernardino County. (*People* v. *Kirkland*, *supra*, 24 Cal.App.4th 891.)

The alternative writ, having served its purpose, is discharged and the petition is denied as moot.

Gilbert, J., and Yegan, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied February 15, 1996.