74 Cal.Rptr.2d 52 (1998)
63 Cal.App.4th 348
The PEOPLE, Plaintiff and Respondent,
v.
Jesse ROBINSON, Defendant and Appellant.
No. B107563.
Court of Appeal, Second District, Division Six.
April 20, 1998.
Kent Douglas Baker, under appointment by the Court of Appeal, San Diego, for Defendant and Appellant.
Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Senior Assistant Attorney General, Marc E. Turchin, Supervising Deputy Attorney General, Kent J. Bullard, Deputy Attorney General, for Plaintiff and Respondent.
STEVEN J. STONE, Presiding Justice.
Jesse Robinson appeals the trial court's judgment finding him to be a mentally disordered offender (MDO) pursuant to Penal Code section 2962 et seq.[1] We affirm on the ground the MDO statutory scheme is civil and does not violate the ex post facto clauses of the federal and state Constitutions.
Appellant was convicted of two counts of involuntary manslaughter. (§ 192, subd. (b).) He was sentenced to state prison and eventually paroled. After appellant violated his parole, the Board of Prison Terms (BPT) determined he met the statutory MDO criteria. (§ 2962.) He was remanded to Atascadero State Hospital. A court trial was conducted to review the BPT's determination. (§ 2966, subd. (b).) The court upheld the BPT's decision.
*53 Appellant contends the trial court erred by denying his motion, arguing that the application of the MDO law violated the federal and state ex post facto clauses. He bases his contention on the date of his underlying offensesJanuary 16, 1989which was during the period after the MDO statutory scheme was declared unconstitutional in People v. Gibson (1988) 204 Cal.App.3d 1425, 252 Cal.Rptr. 56 (Gibson) and before the Legislature amended the statutes effective July 1989 to comply with Gibson. Appellant argues there was no valid MDO statute in existence at the time of his offenses. He states that retroactively applying the amended, post-Gibson statutory scheme increases the punishment for his offenses beyond the punishment available when his offenses were committed. (People v. McVickers (1992) 4 Cal.4th 81, 84, 13 Cal.Rptr.2d 850, 840 P.2d 955.)
The parties dispute whether the inpatient mental treatment required by the MDO statutes is penal or non-penal. The retroactive application of a non-penal statute does not violate ex post facto laws. (1 Witkin, Cal. Criminal Procedure (2d ed. 1988) Introduction To Crimes, § 19, p. 25, citing Conservatorship of Hofferber (1980) 28 Cal.3d 161, 182, 167 Cal.Rptr. 854, 616 P.2d 836.) Appellant here argues the MDO treatment scheme is a punitive, penal law. Respondent argues the MDO scheme is a non-punitive, civil law. We agree with respondent.
In Gibson, we held the MDO law did not require proof of present dangerousness, a requirement applicable to other similarly-situated mentally ill offenders subject to involuntary commitment, and therefore violated the federal and state equal protection clauses. The Legislature responded by amending the law to require proof that a defendant represents a substantial danger of physical harm to others prior to commitment or recommitment to an inpatient facility or an outpatient program. (People v. Superior Court (Myers) (1996) 50 Cal.App.4th 826, 830, 58 Cal.Rptr.2d 32 (Myers).)
We also stated in Gibson that the MDO scheme was essentially penal in nature and consequently was subject to the limitations of the ex post facto clauses. (204 Cal.App.3d at p. 1434, 252 Cal.Rptr. 56.)
In Kansas v. Hendricks (1997) 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (Hendricks), the United States Supreme Court decided the constitutionality of Kansas' Sexually Violent Predator Act, a law which established civil commitment procedures for repeat sexual offenders. The act became effective shortly before Hendricks, an inmate who had a long history of sexually abusing children, was scheduled for release from prison. Hendricks argued that, since he was convicted before the law was enacted, application of the law violated the federal constitutional ban on ex post facto statutes. He asserted the act established criminal proceedings and hence was punitive. (Hendricks, supra, 521 U.S. at pp. ___, ___, 117 S.Ct. at pp. 2076, 2081, 138 L.Ed.2d at pp. 508, 514.)
The Supreme Court decided the Kansas Legislature intended the act to establish a civil proceeding. (Hendricks, supra, 521 U.S. at pp. ___-___, 117 S.Ct. at pp. 2081-2082, 138 L.Ed.2d at pp. 514-515.) The Legislature described the act as creating a "civil commitment procedure" and placed it in the state's probate code.
The law further did not implicate the two primary objectives of criminal punishment, retribution or deterrence. It was not retributive since the prior criminal conduct was used solely to establish a mental abnormality or to support a finding of future dangerousness. (Hendricks, supra, 521 U.S. at p. ___, 117 S.Ct. at p. 2082, 138 L.Ed.2d at p. 515.) The law did not function as a deterrent since the persons subject to the law were unlikely to be deterred by the threat of confinement, and the conditions of confinement were essentially the same conditions placed on any involuntarily committed patient in the state mental institution. (Id., at ___-___, 117 S.Ct. at p. 2082, 138 L.Ed.2d at pp. 515-516.) The potentially indefinite duration of confinement under the act was not punitive since the maximum amount of time a person could be confined pursuant to a single judicial proceeding was one year. (Id., at ___, 117 S.Ct. at p. 2083, 138 L.Ed.2d at p. 516.) "This requirement ... demonstrates that *54 Kansas does not intend an individual committed pursuant to the Act to remain confined any longer than he suffers from a mental abnormality rendering him unable to control his dangerousness." (Ibid.)
Regarding Hendricks' argument that the state's use of criminal procedural safeguards made the law criminal in nature, the Supreme Court held that such safeguards merely demonstrated the Legislature's "great care to confine only a narrow class of particularly dangerous individuals, and then only after meeting the strictest procedural standards. That Kansas chose to afford such procedural protections does not transform a civil commitment proceeding into a criminal prosecution." (Hendricks, supra, 521 U.S. at pp. ___-___, 117 S.Ct. at p. 2083, 138 L.Ed.2d at pp. 516-517.)
The court concluded: "Where the State has `disavowed any punitive intent'; limited confinement to a small segment of particularly dangerous individuals; provided strict procedural safeguards; directed that confined persons be segregated from the general prison population and afforded the same status as others who have been civilly committed; recommended treatment if such is possible; and permitted immediate release upon a showing that the individual is no longer dangerous or mentally impaired, we cannot say that it acted with punitive intent.... Our conclusion that the Act is nonpunitive thus removes an essential prerequisite for ... Hendricks' ... ex post facto claim[]." (Hendricks, supra, 521 U.S. at p. ___, 117 S.Ct. at p. 2085, 138 L.Ed.2d at p. 519.)
Hendricks was decided nine years after our decision in Gibson. Its reasoning is sound and supersedes our ruling in Gibson on the ex post facto issue.[2]Hendricks' analysis of the non-criminal features of Kansas' sexually violent predator law applies equally to California's MDO law. The features of the law analyzed in Hendricks are substantially similar to the features of the MDO law (521 U.S. at p. ___, 117 S.Ct. at p. 2085, 138 L.Ed.2d at p. 519), except that the MDO law governs the mental health treatment of a different type of offender and is placed in the Penal Code instead of a civil law code.
Hendricks also supports a post-Gibson California appellate case, Myers, supra, which holds that the MDO law is civil, not penal, as expressly described by the Legislature in sections 2966, subdivision (b), and 2972, subdivision (a). (50 Cal.App.4th at pp. 834, 835, 58 Cal.Rptr.2d 32.) Myers describes the MDO scheme as being concerned with two objectives, neither of which is penal: protection of the public, and providing mental health treatment for certain offenders who are dangerous and suffering from severe mental illnesses. (Id., at pp. 837-841, 58 Cal.Rptr.2d 32.)
In view of the Legislature's express declaration that the MDO law provides prisoners with a "civil hearing" to determine whether they meet the criteria of the MDO scheme (§§ 2966, subd. (b), 2972, subd. (a)), the scheme's placement in the Penal Code is not a material feature in differentiating it from the mentally-ill offender scheme in Hendricks.
The trial court here properly denied appellant's ex post facto violation motion. The judgment is affirmed.
GILBERT and YEGAN, JJ., concur.
NOTES
[1] All statutory citations henceforth will refer to the Penal Code.
[2] Our reliance in People v. Jenkins (1995) 35 Cal.App.4th 669, 672-674, 41 Cal.Rptr.2d 502, on Gibson's ruling, that the MDO statutory scheme could be applied so as to violate the prohibition against ex post facto laws, also is superseded by Hendricks. (See also our dicta in People v. Superior Court (Jump) (1995) 40 Cal. App.4th 9, 12-13, 46 Cal.Rptr.2d 829, stating that MDO commitments are penal in nature.)