[No. E029464. Fourth Dist., Div. Two. Jan 16, 2002.]

SAMUEL LEE GRAY, Petitioner, v.
THE SUPERIOR COURT OF SAN BERNARDINO COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

John E. Roth, Public Defender, and Pamela P. King, Deputy Public Defender, for Petitioner.

No appearance for Respondent.

Dennis L. Stout, District Attorney, Grover D. Merritt and Mary L. Andonov, Deputy District Attorneys, for Real Party in Interest.

## OPINION

**McKINSTER, Acting P. J.**—Petitioner Samuel Lee Gray (Gray) is the respondent below in a proceeding brought under what is commonly known as the Sexually Violent Predators Act (Act). (Welf. & Inst. Code, § 6600 et seq.)[1] In this proceeding, he seeks to compel dismissal of the proceedings because recent psychological evaluations reflect a difference of expert opinion on whether he meets the statutory criteria for a "sexually violent predator," and is therefore subject to involuntary commitment under the Act.

A petition for commitment as a sexually violent offender was filed against Gray by the San Bernardino County District Attorney on October 11, 1996. It was supported by the expert evaluations of Drs. Charles Jackson and Dean Haddock, both of whom concluded that Gray met the criteria set out in section 6601, subdivision (d).[2]

The matter then languished until 1999.[3] After various trial court proceedings, Gray filed a petition with this court seeking dismissal. In that petition, he argued that three new evaluations had been conducted (by Drs. Kania, Owen, and Matosich), two of which—those by Kania and Owen—expressed the opinion that he did *not* meet the criteria. At that point, a probable cause hearing (§ 6602) had already been held, and the scheduled commencement of trial was imminent. This court denied that petition.

Trial was not held in 1999. In 2001, four more evaluations were obtained. In January, Dr. Matosich evaluated Gray and found that he met the criteria, while Dr. Jackson believed that he did not.[4] In March, there was a similar split of opinion between Drs. Sheppard and Arnold.

Gray then moved for summary judgment (Code Civ. Proc., § 437c) on the basis that the current state of the evaluations established that "essential foundational underpinnings of the petition cannot be established [and] pursuit of the petition is not statutorily authorized." The gravamen of his argument was that Dr. Kania's 1999 opinion was a "replacement" for Dr. Haddock's (who apparently was no longer personally available); that this

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2] In brief, that the subject has a "diagnosed mental disorder" which makes future "acts of sexual violence" likely unless the person is confined and treated.

[3] The parties were probably awaiting the decision of the California Supreme Court in *Hubbart v. Superior Court* (1999) 19 Cal.4th 1138 [81 Cal.Rptr.2d 492, 969 P.2d 584], in which the court upheld the Act against various constitutional challenges.

[4] It will be remembered that in 1996, Dr. Jackson felt that Gray *did* meet the criteria.

created a split of opinion with Dr. Jackson;[5] and that under section 6601, subdivision (f), the petition was only proper if *both* of the *second* set of evaluators (Owen and Matosich) agreed that he met the Act's criteria.[6] The trial court disagreed and this petition followed.[7]

## The Statutory Scheme

The portions of the Act which are crucial to this case prescribe the conditions which must exist in order for a petition for commitment to be filed. As effective in 1996, an inmate who was found likely to be a sexually violent predator after an initial screening by the Department of Corrections or Board of Prison Terms, was to be evaluated by two mental health professionals. If both agreed that the inmate met the criteria, a petition could be filed. (§ 6601, subd. (d).) If only one believed that the inmate qualified, a second round of evaluations by a pair of "independent professionals"[8] was to be conducted, and a petition could only be filed if *both* of these independent evaluators found that the inmate met the criteria. (§ 6601, subds. (e) & (f).)

It is not disputed that the 1996 filing was properly supported by two concurring initial evaluations, those of Drs. Jackson and Haddock. However, Gray notes that the evaluation performed in 1999 by Dr. Kania was apparently intended as a "replacement" for that of the unavailable Dr. Haddock under section 6603, subdivision (c).[9] He then argues that because Dr.

---

[5]Dr. Jackson had updated his evaluation of Gray in 1998, finding him still to meet the statutory criteria.

[6]In opposition to the motion, the People filed a declaration by Attorney Camelia Mesrobian in which she generally recounted the chronology of the evaluations, their conclusions, and also presented some claimed details of Gray's conduct. Gray objected to the information as incompetent hearsay, and repeats the objections here. Because the issue before us depends on the undisputed content of the evaluations, and their effect on the proceeding, we need not resolve the objections. We assume that the trial court disregarded the prosecutor's glosses on the reports, such as that describing Dr. Kania's report as "superficial and inconclusive."

[7]The Supreme Court's action is not necessarily an expression of its disagreement with our earlier ruling, but only that it may believe that a full opinion is warranted under the circumstances of the case. Thus, we are in no way precluded from reaching the same result. (*Bridgestone/Firestone, Inc. v. Superior Court* (1992) 7 Cal.App.4th 1384, 1389, fn. 4 [9 Cal.Rptr.2d 709]; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2001) ¶ 13:125.1, p. 13-29.) We certainly remain free, absent express directions, to reach the same conclusion we did on our earlier review. (See, e.g., *U.D. Registry, Inc. v. Superior Court* (1995) 39 Cal.App.4th 1241, 1242 [46 Cal.Rptr.2d 363].)

[8]These evaluators must have specified professional qualifications and may *not* be employed by the state. (§ 6601, subd. (g).)

[9]At all pertinent times, that statute provided in part: "If the attorney petitioning for commitment under this article determines that updated evaluations are necessary in order to properly present the case for commitment, the attorney may request the State Department of Mental Health to perform updated evaluations. If one or more of the original evaluators is no

Kania's opinion created a "split" with that of Dr. Jackson, that section 6603 subdivision (c) requires two additional evaluations—here, those of Drs. Owen and Matosich. Because *these* two evaluators did not agree, Gray asserts that the petition was no longer viable.[10]

The basis for this assertion is the reference in section 6603, subdivision (c), back to section 6601, subdivision (f). The latter statute provides that when the original two evaluators disagree, a petition may only be filed if both of the "independent professionals" find that the inmate does meet the Act's criteria. Gray contends that the statute also requires the dismissal of an existing petition if later evaluations do not produce the concurrence required for an initial filing.

As the Supreme Court noted in *Albertson v. Superior Court* (2001) 25 Cal.4th 796, 805-806 [107 Cal.Rptr.2d 381, 23 P.3d 611] (*Albertson*), subdivision (c) of section 6603 was enacted in response to a decision by the Court of Appeal (*Sporich v. Superior Court* (2000) 77 Cal.App.4th 422 [91 Cal.Rptr.2d 752]) which held that the People were not entitled to obtain new or updated evaluations, even if trial on a petition was delayed for months or (as in this case) years. Such an evaluation may be crucial, because a commitment under the Act must be based on an inmate's "currently diagnosed mental disorder." (§ 6600, subd. (a)(3).) Accordingly, it is plain that "a county seeking . . . commitment [under the Act] would be placed in an untenable position were it precluded from obtaining access to information concerning an individual's current mental state." (*Albertson, supra,* 25 Cal.4th at pp. 802-803.)

This much is clear. It is less clear, however, what the Legislature's purpose was in providing for a further set of evaluations in the event that an update (or replacement) resulted in a split of opinion.[11]

---

longer available to testify in court proceedings, the attorney petitioning for commitment under this article may request the State Department of Mental Health to perform replacement evaluations. . . . If an updated or replacement evaluation results in a split opinion as to whether the subject meets the criteria for commitment, the State Department of Mental Health shall conduct two additional evaluations in accordance with subdivision (f) of Section 6601." An amendment effective September 24, 2001, made nonsubstantive changes to this subdivision. (Stats. 2001, ch. 323, § 2.)

[10]Here, there *have* been two further concurring opinions that Gray meets the criteria, but they are separated by other opposing evaluations. We will assume, arguendo, that if a pair of concurring opinions are required if the proceeding is to continue, those opinions must come as a pair; that is, that the People could not satisfy the condition by obtaining as many evaluations as were necessary to produce two that indicated that a subject person met the criteria.

[11]It is possible that there will already be a split of opinion, as a petition may be filed if (a) the first two evaluations reflect a split, but (b) the resulting second set concur that the person

Gray's position, of course, is that the Legislature intended that *all* provisions of section 6601 relating to evaluation should apply to a split of opinion created by new evaluations, even if the application requires us either to insert language into section 6603, subdivision (c), or to construe the former section through the use of analogy.

█ It is axiomatic that in construing or interpreting legislation, the courts should not imply additional language in order to accomplish some supposed legislative purpose, at least not without very clear indications that the purpose was intended. (See *Robert F. Kennedy Medical Center v. Belshé* (1996) 13 Cal.4th 748, 756 [55 Cal.Rptr.2d 107, 919 P.2d 721]; *Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 827 [4 Cal.Rptr.2d 615, 823 P.2d 1216].) █ Section 6603, subdivision (c), simply provides that if a replacement or updated evaluation results in a split opinion, "the State Department of Mental Health shall conduct two additional evaluations in accordance with subdivision (f) of Section 6601." The latter statute, in turn, provides for "independent professionals," and requires these evaluators to provide certain information to the person being examined. To this extent, subdivision (f) of section 6601 has a clear application to the new evaluations required by section 6603, subdivision (c). However, subdivision (f), as Gray stresses, also prohibits the filing of a petition under the Act unless both of the independent evaluators concur that the subject qualifies.[12] This does not apply to Gray's situation.

Gray would have us amend subdivision (f) of section 6601 to read in part (with changes in the language italicized): "[A] petition to request commitment under this article shall only be filed if both independent professionals who evaluate the person pursuant to subdivision (e) concur that the person meets the criteria for commitment specified in subdivision (d). *Furthermore,*

---

meets the Act's criteria. (§ 6601, subds. (e) & (f).) There would then be a three-to-one split at the time of filing.

If the first pair of evaluators has concurred, a "replacement" evaluation finding that the person does not meet the criteria would create a two-to-one split in favor of suitability. If the replacement follows an original three-to-one decision, it would create a three-to-two split (as presumably no replacement would be sought for the original does-not-meet-criteria view). An "update" might result in either a two-to-one split (if the evaluator's original opinion was given continued validity), or a one-to-one split (if it was not), and so on.

In this case, there have apparently been nine evaluations, or 10 if Dr. Jackson's 1998 update is counted. Some evaluators have dropped out, some have changed their minds, and we have no intention of calculating the current "score." We simply agree that there is a definite split.

[12]It will be remembered that the section 6601, subdivision (f) evaluations are only conducted if the *first* pair of evaluations result in a split opinion.

*if the independent professionals who evaluate the person—after a split of opinion has resulted from an updated or replacement opinion—do not concur, a pending proceeding under this Act shall be forthwith dismissed.*" This, however, is not what the statute says. To say that a petition may not be filed unless certain conditions are met is not the same as to say that proceedings "may not go forward" if those conditions cease to exist.

Gray's view of what the statute should say, or how it should be interpreted, is not implausible. As section 6605, and the court in *Albertson* recognize, the mental state or condition of a person who is the subject of proceedings under the Act may change during the pendency of proceedings, especially where they are, as here, protracted. Arguably, it would be desirable to provide that if the factors which supported the filing of a petition no longer exist, proceedings should terminate.

But neither is the contrary position unreasonable. Section 6603, subdivision (c), merely provides that the new evaluators shall conduct their evaluations "in accordance with" section 6601, subdivision (f). It does not, on its face, provide any consequences for a split of opinion between the second set of evaluators.[13] Accordingly, we are unwilling to imply the drastic requirement of dismissal.

It may be argued that the purpose of the second set of evaluators required by section 6603, subdivision (c), in the event of a postfiling split of opinion, can only be to resolve the difference of expert opinion, and thereafter to lead to such further action—either continued prosecution or dismissal—as may be mandated by the new evaluations. However, the Legislature certainly knows how to provide for dismissal when it wishes to do so. Section 6602, subdivision (a), which relates to probable cause hearings, clearly requires that "[i]f the judge determines there is not probable cause [to believe that the person is a sexually violent predator], he or she shall dismiss the petition . . . ." Thus, we find it unlikely that the silence in the statutes we are considering reflects a legislative intent for dismissal. In the circumstances, we think it more likely that the required new evaluations are intended for informational and evidentiary purposes.

While original evaluations are generally performed by state employees, the Legislature may well have thought that if a conflict arises in the postfiling context, it is desirable to bring in the "independent professionals"

---

[13]Or, for that matter, for a concurrence between them that the subject does not meet the Act's criteria.

described in section 6601, subdivision (g), to examine the subject person and provide current evaluations. If these two independent professionals both agreed with the "updated" or "replacement" evaluation that the subject person does not at the present time meet the criteria of the Act, the prosecuting attorney[14] might well elect to dismiss the proceeding. In this way, by providing current and persuasive expert opinion, the requirements of section 6603, subdivision (c) would result in the avoidance of expensive trial proceedings that the prosecuting attorney believed would be doomed to failure. (See *In re Parker* (1998) 60 Cal.App.4th 1453, 1463 [71 Cal.Rptr.2d 167], on the value of probable cause hearings in weeding out meritless cases prior to trial.) Insofar as Gray argues that the new evaluations are intended to prevent the commitment of persons who are *not* sexually violent predators, our interpretation does no harm to this intent.

On the other hand, if the new evaluations merely reflect a further difference of opinion, there is no reason why the prosecuting attorney should be bound to act in compliance with the view of the evaluator (or even evaluators) favoring the subject person. It is true that the Act's provisions, particularly the provisions for expert concurrence, establish substantial safeguards before a petition may even be filed. However, once the Act has been satisfied by sufficient expert opinion that the subject person meets the Act's criteria, little in the way of justice would be gained by permitting proceedings to be derailed by the possibly fortuitous timing of conflicting opinions. As the People point out, a purely numerical standard for the continuation of a proceeding would deprive the trier of fact of the opportunity to make a *qualitative* assessment of the experts' opinions. As the opinions accumulate, such an analysis becomes ever more important and desirable; it is not the number of opinions that matters, but their persuasiveness.

Once a petition under the Act has been filed, and the trial court (as here) has found probable cause to exist, the matter should proceed to trial. In other words, once a petition has been properly filed and the court has obtained jurisdiction, the question of whether a person is a sexually violent predator should be left to the trier of fact *unless* the prosecuting attorney is satisfied that proceedings should be abandoned.

Another factor in favor of this conclusion is that Gray's construction would place the prosecuting attorney in a difficult position. Where trial has

[14]The Act uses the term "attorney petitioning for commitment." (See, e.g., § 6603, subd. (c).) Although we recognize that proceedings under the Act are civil in nature (see *Hubbart v. Superior Court, supra*, 19 Cal.4th at pp. 1166-1167), we refer to the "prosecuting attorney" to avoid confusion with references to the petitioner in this matter, Gray.

been delayed, an updated evaluation may be essential if the People are to carry their burden of establishing that the subject person meets the criteria of the Act beyond a reasonable doubt. (§ 6604.) If the new evaluation created a split of opinion, and if that split could lead to the unraveling of the proceeding without any further qualitative consideration of the evaluations—either by the court or another trier of fact—then the prosecuting attorney might simply elect to stand on the existing opinions, however stale and, for that reason, potentially unpersuasive. Not only would this threaten prejudice solely to the prosecuting attorney; as we have noted above, if new evaluations were avoided due to the potential for mandatory dismissal, the subject person would lose the possible benefit that such evaluations would persuade the prosecuting attorney to dismiss the proceeding under the Act.[15]

Finally, we note that this case provides a perfect example of why a postfiling split of opinion should not lead to mandatory dismissal no matter what the "count" of experts may be at any given time. Over five years have elapsed since the petition was filed, and almost four years separate the most recent evaluations from the first. Over the last few years the experts have consistently disagreed about Gray's condition. However, he has refused to be interviewed since the original evaluations were prepared.[16] The record suggests that he has participated only desultorily in therapy and has "resisted assessment." The current divergence of expert views therefore demonstrates more the imprecision of psychiatric determination than the likelihood that Gray's mental condition has actually altered for the better. Sound policy requires that it be left to the trier of fact, in a plenary proceeding, to winnow out the less convincing opinions and reach a conclusion on the ultimate issues.

---

[15]It is to be noted that this petition results from the denial of a motion for summary judgment. In civil proceedings, in order to preserve the right to jury trial, there is no procedure by which an action can be dismissed on equitable grounds. (Cf. Pen. Code, § 1385; see also *People v. Gillispie* (1997) 60 Cal.App.4th 429, 432-433 [70 Cal.Rptr.2d 462].)

[16]Section 6603, subdivision (c) provides that the person shall be interviewed "either voluntarily, or by court order," but it is not at all clear how the person could be forced to talk, or whether compelled responses would have much diagnostic value.

At this point, we also note that at oral argument Gray repeatedly stressed the "rigorous" invasion of privacy represented by the new evaluations and the new examination of his treatment records. In the circumstances, his right of privacy is somewhat attentuated and it is clear that the evaluators may review his records. (See *Albertson, supra,* 25 Cal.4th at p. 807; *People v. Martinez* (2001) 88 Cal.App.4th 465, 477-480 [105 Cal.Rptr.2d 841].) Gray appears to argue that if the invasion of privacy fails to result in conclusive evidence in favor of the People, his feelings must be assuaged by dismissal. We do not agree.

## DISPOSITION

Gray was not entitled to summary judgment. The petition is denied.

Richli, J., and Ward, J., concurred.

Petitioner's petition for review by the Supreme Court was denied April 10, 2002. George, C. J., did not participate therein.