[No. B227337. Second Dist., Div. Seven. Feb. 24, 2011.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT LOS ANGELES COUNTY, Respondent,
GEORGE BRADIE SALTER, JR., Real Party in Interest.

COUNSEL

Steve Cooley, District Attorney, Phyllis C. Asayama and Roberta Schwartz, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Michael P. Judge and Ronald L. Brown, Public Defenders, Albert J. Menaster, Kathryn Hirano and Jack T. Weedin, Deputy Public Defenders, for Real Party in Interest.

OPINION

JACKSON, J.—

## INTRODUCTION

Real party in interest George Bradie Salter, Jr. (Salter), pled no contest to attempted murder (Pen. Code,[1] §§ 187, 664) based upon his actions in kidnapping his girlfriend, stabbing her in the face and cutting her throat. He was sentenced to prison for 10 years and was paroled in 2007. In 2008, Salter was returned to prison for a parole violation after exposing himself to two teenage girls. While in prison, he was identified as a potential mentally disordered offender (MDO) and sent to Atascadero State Hospital (Atascadero). Based upon the recommendation of Atascadero's medical director, the People filed a petition for involuntary treatment (§ 2970), seeking to extend Salter's commitment. Salter successfully moved to dismiss the People's petition after another doctor at Atascadero recommended against continued commitment.

We are now called upon to determine whether the trial court erred in granting Salter's motion to dismiss the People's petition for involuntary treatment. We conclude the trial court erred and therefore grant the People's petition for writ of mandate.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 30, 2010, while Salter was confined at Atascadero, Dr. Robert Knapp, the hospital's medical director, asked the district attorney to extend Salter's civil commitment. On May 24, in response to Dr. Knapp's request,

---

[1] Unless otherwise specified, all further statutory references are to the Penal Code.

the People filed a petition for involuntary treatment pursuant to section 2970. On June 8, Salter was arraigned on the petition and two experts were appointed to evaluate him. Dr. Kory Knapke submitted a report on August 1, stating that Salter did not qualify for involuntary treatment. Dr. Mark Jaffe submitted a report on August 18, indicating that Salter did qualify for involuntary treatment. On August 27, Dr. Jean Joseph Dansereau, the acting medical director at Atascadero, reported that Salter was reevaluated on August 24 and recommended against civil commitment. Dr. Dansereau specified that this reflected "a change in our recommendation."

At the pretrial hearing on September 3, 2010, Salter's attorney made an oral motion to dismiss the People's petition for involuntary treatment based on Dr. Dansereau's changed recommendation. On September 8, the trial court granted Salter's motion, dismissed the People's petition and ordered Salter released from involuntary treatment. This court stayed Salter's release pending disposition of this proceeding or further order of the court.

## DISCUSSION

### The MDO Act

The MDO Act (§ 2960 et seq.) was enacted "to protect the public from dangerously mentally disordered criminal offenders." (*People v. Superior Court* (*Myers*) (1996) 50 Cal.App.4th 826, 830 [58 Cal.Rptr.2d 32].) It "requires certain mentally disordered prisoners who have committed specifically identified violent crimes to submit to continued mental health treatment . . . ." (*Ibid.*; accord, § 2962.)

The determination that an individual requires treatment as an MDO is governed by six criteria enunciated in section 2962. Such treatment is warranted if the prisoner "(1) has a severe mental disorder; (2) used force or violence in committing the underlying offense; (3) had a disorder which caused or was an aggravating factor in committing the offense; (4) the disorder is not in remission or capable of being kept in remission absent treatment; (5) the prisoner was treated for the disorder for at least 90 days in the year before being paroled; and (6) because of the disorder, the prisoner poses a serious threat of physical harm to other people." (*People v. Clark* (2000) 82 Cal.App.4th 1072, 1075–1076 [98 Cal.Rptr.2d 767].) Treatment is inpatient unless the State Department of Mental Health agrees to treat the prisoner on an outpatient basis. (§ 2964; *People v. Superior Court* (*Myers*), *supra*, 50 Cal.App.4th at p. 831.) If the prisoner's severe mental disorder can be put into and kept in remission, treatment must be discontinued. (§ 2968;

*Myers, supra,* at p. 831.) If not, the extension provisions of section 2970 come into play. (*Myers, supra,* at p. 831.)

■ Under section 2970, "if the prisoner's severe mental disorder is not in remission or cannot be kept in remission without treatment, the medical director of the state hospital which is treating the parolee . . . shall submit to the district attorney of the county in which the parolee is receiving outpatient treatment, or for those in prison or in a state mental hospital, the district attorney of the county of commitment, his or her written evaluation on remission." The evaluation must be submitted to the district attorney "[n]ot later than 180 days prior to the termination of parole, or release from prison if the prisoner refused to agree to treatment as a condition of parole as required by Section 2962." (*Ibid.*) After receipt of the evaluation, "[t]he district attorney may then file a petition with the superior court for continued involuntary treatment for one year." (§ 2970.) Among other things, the petition shall "specify that the prisoner has a severe mental disorder, that the severe mental disorder is not in remission or cannot be kept in remission if the person's treatment is not continued, and that, by reason of his or her severe mental disorder, the prisoner represents a substantial danger of physical harm to others." (*Ibid.*)

■ Section 2972 requires the court to conduct a hearing on the petition for continued treatment filed pursuant to section 2970. Recommitment must be ordered if the court or a jury finds "(1) that the [prisoner] has a severe mental disorder; (2) that the disorder is not in remission or cannot be kept in remission without treatment; and (3) that the [prisoner] represents a substantial danger of physical harm to others by reason of the disorder. (§ 2972, subd. (c).)" (*People v. Merfield* (2007) 147 Cal.App.4th 1071, 1075, fn. 2 [54 Cal.Rptr.3d 834].) The patient must be "recommitted to the facility in which the patient was confined at the time the petition was filed, or recommitted to the outpatient program in which he or she was being treated at the time the petition was filed, or committed to the State Department of Mental Health if the person was in prison. The commitment shall be for a period of one year from the date of termination of parole or a previous commitment or the scheduled date of release from prison as specified in Section 2970." (§ 2972, subd. (c).)

*The People's Right to a Trial*

■ The People contend the ruling by the trial court deprived them of their right to a jury trial. We agree.

■ "Once a petition under the Act has been filed, and the trial court (as here) has found probable cause to exist, the matter should proceed to trial. In other words, once a petition has been properly filed and the court has obtained jurisdiction, the question of whether a person is a sexually violent predator should be left to the trier of fact *unless* the prosecuting attorney is satisfied that proceedings should be abandoned." (*Gray v. Superior Court* (2002) 95 Cal.App.4th 322, 329 [115 Cal.Rptr.2d 477].)

While the *Gray* case involved the sexually violent predator (SVP) process, which provides for probable cause hearings, which are not provided for in the MDO process, the distinction is not significant. *People v. McKee* (2010) 47 Cal.4th 1172 [104 Cal.Rptr.3d 427, 223 P.3d 566] makes it clear "that MDO's and SVP's are similarly situated." (*Id.* at p. 1203.) Both MDO's and SVP's suffer from mental disorders that render them dangerous to others, and both have been convicted of a serious or violent felony. (*Ibid.*)

While Salter relies on the cases of *People v. Marchman* (2006) 145 Cal.App.4th 79 [51 Cal.Rptr.3d 369] and *Cuccia v. Superior Court* (2007) 153 Cal.App.4th 347 [62 Cal.Rptr.3d 796], they are factually distinguishable from the instant case. In *Marchman,* the court held that "the district attorney did not have statutory authority to initiate [re]commitment proceedings . . ." under the MDO Act without a determination by the medical director that the severe mental disorder was not in remission. (*Marchman, supra,* at p. 89.) There, after several years of determinations that the defendant met the criteria for involuntary treatment under section 2970, the medical director of Atascadero determined that the defendant's mental disorder was in remission. However, the district attorney felt that he had independent authority under the MDO Act to file a petition for continued treatment based upon a medical evaluation. The court concluded that "the district attorney may only initiate a recommitment proceeding when the director of the facility" provides "a written evaluation in accordance with section 2970 that the prisoner's severe mental disorder [was] not in remission, or cannot be kept in remission without treatment." (*Marchman, supra,* at p. 89.)

In *Cuccia,* despite the unanimous views of the treatment staff and the medical director that the defendant's mental disorder was in remission, the People filed a petition to extend the defendant's MDO commitment. (*Cuccia v. Superior Court, supra,* 153 Cal.App.4th at p. 351.) The court followed *Marchman* and rejected the People's position. The court explained, "The presumption is, our experience with MDO proceedings has shown, and we believe, that those mental health professionals who implement the MDO statutory scheme do so with honestly [*sic*] and integrity. Indeed, in the vast majority of cases where the Department of Mental Health says that an MDO

recommitment petition should be filed, the People agree. They should not be permitted to do a statutorily unauthorized 'end run' simply to achieve a result which they think is warranted." (*Cuccia, supra,* at p. 356.)

The facts in the instant case are distinguishable, and we do not believe that the People were attempting an "end run" around the statute simply to achieve a result that they desired. The petition for involuntary commitment had been filed only after the director had recommended it. It was not filed by the People on a whim or because they disagreed with the director.

In response, Salter contends that ordering a jury trial would be a waste of resources and elevate form over substance. He also contends that, in any event, the trial court could have granted a motion for summary judgment and the petition could have been dismissed pursuant to section 437c of the Code of Civil Procedure because MDO proceedings are civil. We disagree.

As to the first part of Salter's contention, we note that there are conflicting medical opinions as to whether he is in remission. The People are entitled to a jury trial to resolve these conflicts. (Cf. *Gray v. Superior Court, supra,* 95 Cal.App.4th at p. 329.)

■ In addition, we find no authority that would permit the People to obtain a summary judgment in MDO proceedings. In *Bagration v. Superior Court* (2003) 110 Cal.App.4th 1677 [3 Cal.Rptr.3d 292], the court rejected the use of the summary judgment procedure in SVP proceedings. It explained that "Code of Civil Procedure section 437c is inherently inconsistent with the SVP Act because the *mutual* summary procedures set forth in Code of Civil Procedure section 437c, if applied to SVP Act proceedings, would allow an individual to be adjudicated a sexually violent predator without benefit of the required beyond a reasonable doubt burden of proof and, in the case of a jury trial, a unanimous verdict—impairing the requirements that are at the heart of the statute's due process protections." (*Bagration, supra,* 110 Cal.App.4th at pp. 1688–1689.)

The same analysis is certainly applicable to MDO proceedings. Indeed, when a motion for directed verdict was used by a prosecutor to deprive an MDO of a jury adjudication of his status, the Court of Appeal found that it was erroneous to apply the civil trial procedure to MDO proceedings. (*People v. Cosgrove* (2002) 100 Cal.App.4th 1266, 1274–1275 [123 Cal.Rptr.2d 535].) We see no reason in logic or law to allow either party to deprive the other of the right to a jury trial that is allowed in the MDO legislation.

## DISPOSITION

The People's petition for writ of mandate is granted. The trial court is directed to vacate its order of September 8, 2010, and to set the matter for trial on the merits of the petition for involuntary treatment.

Woods, Acting P. J., and Zelon, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied June 8, 2011, S191900. Kennard, J., was of the opinion that the petition should be granted.