Filed 10/29/13  P. v. Palmer CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br> Plaintiff and Respondent,<br><br> v.<br><br>WILLIAM DUANE PALMER,<br><br> Defendant and Appellant. | G047095<br><br>(Super. Ct. No. 06NF4090)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Michael Brenner, Judge.  (Retired Judge of the Orange Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Dismissed.

Barbara A. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, James D. Dutton and Donald W. Ostertag, Deputy Attorneys General, for Plaintiff and Respondent.

*          *          *

Defendant and appellant William Duane Palmer appeals from an order recommitting him to Atascadero State Hospital (Atascadero) under the Mentally Disordered Offender Act (Pen. Code, § 2960 et seq.; MDO Act) and authorizing Atascadero to administer antipsychotic medication to him involuntarily.[1]  Palmer does not challenge the order recommitting him to Atascadero, but challenges the sufficiency of the evidence to support the involuntary medication order.  Palmer, however, concedes the order expired while this appeal was pending and therefore we dismiss the appeal as moot.

I

FACTUAL AND PROCEDURAL BACKGROUND

Palmer has a long history of mental illness and his current diagnosis is schizoaffective disorder, polysubstance dependence, and antisocial personality disorder. His primary psychiatric symptoms include paranoid delusions, auditory hallucinations, mania, mood lability, agitation, and assaultiveness.  Palmer's criminal history began at age 13 when the juvenile court sustained a petition for burglary.  As an adult, he has a history of gun theft, receiving stolen property, possession of burglary tools, using controlled substances, petty theft, trespassing, terrorist threats, burglary, firearm possession, and indecent exposure and masturbation while incarcerated.

In 2006, Palmer angrily confronted a small group of teenagers, spit at the group, and threatened to kill them with both a baseball bat and a pellet gun.  For his actions, the prosecutor charged Palmer with four felony counts of making criminal threats and one misdemeanor count of brandishing an imitation firearm.  Palmer pleaded guilty to two of the felony counts and the misdemeanor count, and the remaining two felony counts were dismissed.  The trial court sentenced him to three years of formal probation

_____

[1]      All statutory references are to the Penal Code unless otherwise stated.

2

and the approximately 250 days he already had served in county jail. Palmer's probation conditions included receiving therapy through a Department of Mental Health program.

In December 2007, Palmer violated his probation by failing to attend his therapy sessions and take his medications. The trial court ordered him to serve 90 days in jail and reinstated his probation. In March 2008, Palmer again violated his probation by failing to attend his therapy sessions, take his medications, and report to his probation officer. As a result, the trial court terminated Palmer's probation and sentenced him to 16 months in state prison for his earlier offenses. While in prison, Palmer often refused to take his medications and his behavior was extremely agitated, delusional, and hostile.

On August 1, 2011, Palmer was certified as a mentally disordered offender (MDO) and admitted to Atascadero under the MDO Act. While at Atascadero, Palmer remained uncooperative in taking his medication and participating in treatment. He also grew increasingly hostile and threatening toward staff, would yell at voices he heard, and became emaciated after starving himself and losing 40 pounds. On one occasion, Palmer came out of his room at Atascadero, began yelling at a patient walking in the hallway, and struck that patient in the mouth. Palmer stated he would punch the patient again if given the chance.

In November 2011, the prosecutor filed a petition to extend Palmer's MDO commitment at Atascadero for one year. While that petition was pending, the prosecutor also moved for an order to involuntarily administer antipsychotic medications for Palmer. In May 2012, a jury found Palmer continued to qualify as an MDO. Based on the jury's findings, the trial court extended Palmer's commitment to May 31, 2013. The trial court also granted the prosecutor's request for an order permitting involuntary medication, explaining the order was necessary because Palmer was dangerous under Welfare and Institutions Code section 5300.

Palmer timely appealed the trial court's order.  On appeal, he does not challenge the order extending his commitment, but argues the involuntary medication order was not supported by substantial evidence.

## II

### DISCUSSION

A.      *The MDO Act and Involuntary Medication*

"The [MDO Act], enacted in 1985, requires that offenders who have been convicted of violent crimes related to their mental disorders, and who continue to pose a danger to society, receive mental health treatment during and after the termination of their parole until their mental disorder can be kept in remission.  [Citation.]  Although the nature of an offender's past criminal conduct is one of the criteria for treatment as [an MDO], the MDO Act itself is not punitive or penal in nature.  [Citation.]  Rather, the purpose of the scheme is to provide MDO's with treatment while at the same time protecting the general public from the danger to society posed by an offender with a mental disorder.  [Citation.]" (*In re Qawi* (2004) 32 Cal.4th 1, 9.)

"Treatment [under the MDO Act] is inpatient unless the State Department of Mental Health agrees to treat the prisoner on an outpatient basis.  [Citations.]  If the prisoner's severe mental disorder can be put into and kept in remission, treatment must be discontinued.  [Citations.]  If not, the extension provisions of section 2970 come into play.  [Citation.]" (*People v. Superior Court (Salter)* (2011) 192 Cal.App.4th 1352, 1356-1357 (*Salter*).)

"Under section 2970, 'if the prisoner's severe mental disorder is not in remission or cannot be kept in remission without treatment, the medical director of the state hospital which is treating the parolee . . . shall submit to the district attorney of the county in which the parolee is receiving outpatient treatment, or for those in prison or in a state mental hospital, the district attorney of the county of commitment, his or her written

4

evaluation on remission.'  The evaluation must be submitted to the district attorney '[n]ot later than 180 days prior to the termination of parole, or release from prison if the prisoner refused to agree to treatment as a condition of parole as required by Section 2962.'  [Citation.]  After receipt of the evaluation, '[t]he district attorney may then file a petition with the superior court for continued involuntary treatment for one year.'  [Citation.]"  (*Salter*, *supra*, 192 Cal.App.4th at p. 1357.)

"Section 2972 requires the court to conduct a hearing on the petition for continued treatment filed pursuant to section 2970.  Recommitment must be ordered if the court or a jury finds '(1) that the [prisoner] has a severe mental disorder; (2) that the disorder is not in remission or cannot be kept in remission without treatment; and (3) that the [prisoner] represents a substantial danger of physical harm to others by reason of the disorder.  [Citation.]'  [Citation.]  . . .  The commitment shall be for a period of one year from the date of termination of parole or a previous commitment or the scheduled date of release from prison as specified in Section 2970.'  [Citation.]"  (*Salter*, *supra*, 192 Cal.App.4th at p. 1357.)

Although competent adults have a constitutionally protected liberty interest in their right to refuse necessary medical treatment, including antipsychotic drugs (*People v. Fisher* (2009) 172 Cal.App.4th 1006, 1012-1013 (*Fisher*); see also *In re Qawi*, *supra*, 32 Cal.4th at p. 17), an MDO's right to refuse treatment "may be restricted to accommodate the state's interest in protecting the public and providing mental health treatment for offenders who are dangerous as a result of severe mental illness. [Citations.]"  (*Fisher*, at p. 1013.)  Indeed, "the MDO's right to refuse antipsychotic drugs is qualified and may be overcome in nonemergency situations by a judicial determination either that the person is incompetent or that he or she is dangerous within the meaning of [Welfare and Institutions Code] section 5300:  '[A]n MDO can be compelled to be treated with antipsychotic medication under the following nonemergency circumstances:  (1) he is determined *by a court* to be incompetent to refuse medical

5

treatment; (2) the MDO is determined *by a court* to be a danger to others within the meaning of Welfare and Institutions Code section 5300.' (*In re Qawi*, *supra*, 32 Cal.4th at p. 27, italics added.)" (*Fisher*, at p. 1013.)  We review an order authorizing an MDO to receive involuntary antipsychotic medication for substantial evidence.  (*Id*. at p. 1016.)

B.      *Palmer's Appeal Is Moot Because the Challenged Order Expired*

Palmer concedes the order recommitting him to Atascadero and "the concomitant medication order" expired on May 31, 2013, but he nonetheless argues his appeal challenging the involuntary medication order is not moot.  Although the Attorney General failed to address Palmer's argument against mootness, we conclude the appeal is moot and therefore dismiss it.

"'As a general rule, an appellate court only decides actual controversies.  It is not the function of the appellate court to render opinions """"upon moot questions or abstract propositions, or . . . declare principles or rules of law which cannot affect the matter in issue in the case before it."""" [Citation.]  "[A] case becomes moot when a court ruling can have no practical effect or cannot provide the parties with effective relief."' [Citation.]" (*People v. Gregerson* (2011) 202 Cal.App.4th 306, 321.)  Here, we cannot provide Palmer any effective relief because the order he challenges already has expired by its own terms.

An appellate court retains discretion to decide a moot appeal if the issue raised presents an important matter of public interest that will continue to recur and evade review.  (See, e.g., *County of Fresno v. Shelton* (1998) 66 Cal.App.4th 996, 1006; *In re Jody R.* (1990) 218 Cal.App.3d 1615, 1622.)  In *People v. Cheek* (2001) 25 Cal.4th 894 (*Cheek*), the defendant challenged an order following the annual review hearing afforded defendants committed under the Sexually Violent Predators Act (SVPA) (Welf. & Inst. Code, § 6600 et seq.).  (*Cheek*, at p. 896.)  Before addressing the merits, the Supreme Court recognized the defendant's two-year commitment under the SVPA expired during

the pendency of the appeal.  (*Id*. at p. 897.)  Nonetheless, the issue presented—whether a defendant has a right to call witnesses and cross-examine the state's witnesses at the annual review hearing—was one "likely to recur while evading appellate review" and involved a "matter of public interest."  (*Id*. at pp. 897-898.)  The Supreme Court exercised its discretion to address the issue for the guidance of future proceedings before dismissing the case as moot.  (*Id*. at p. 898; see also *People v. Hurtado* (2002) 28 Cal.4th 1179, 1185-1186 [concluding appeal was moot but determining whether jury must find SVPA defendant will commit predatory acts because the issue arises in virtually every SVPA trial and appeal].)

In *People v. Fernandez* (1999) 70 Cal.App.4th 117 (*Fernandez*), an MDO defendant argued the trial court lacked jurisdiction to extend his commitment because certain procedural requirements had not been met.  The appeal was moot because the recommitment order had expired, but the appellate court still reached the merits.  The record showed the defendant's commitment period had been extended while the appeal was pending and the court found "our decision [might] still affect the lower court's right to continue jurisdiction under the original commitment as well as the recommitment." (*Id*. at pp. 134-135; see also *People v. Williams* (1999) 77 Cal.App.4th 436, 441, fn. 2 [although appeal from MDO recommitment order was "technically moot," the appellate court addressed the merits because the issue of the trial court's jurisdiction was "important and of continuing interest"].)

Unlike the foregoing cases, Palmer's appeal does not involve an issue of public interest.  Rather, Palmer solely challenges the sufficiency of the evidence to support his expired involuntary medication order, an issue that does not affect the court's jurisdiction, as in *Fernandez*, and is not a novel question of unsettled law, as in *Cheek*. (See *Fernandez*, *supra*, 70 Cal.App.4th at pp. 134-135; *Cheek*, *supra*, 25 Cal.4th at pp. 897-898.)  Similarly, whether the specific evidence the prosecutor offered constituted substantial evidence justifying the expired involuntary medication order is not likely to

7

recur. Any future application for an involuntary medication order against Palmer or any other MDO must be decided based on the specific evidence presented on that application.

The trial court issued the expired order based on its finding Palmer was dangerous within the meaning of Welfare and Institutions Code section 5300. (*In re Qawi*, *supra*, 32 Cal.4th at pp. 9-10, 27.) "Section 5300 requires a particularized showing that [(1)] the person is a demonstrated danger and [(2)] he or she was recently dangerous. [Citation.] In the case of an MDO, the commitment offense may establish demonstrated dangerousness and recent dangerousness consists of 'violent or threatening acts specified in section 5300 within the year prior to the commitment or recommitment.' [Citation.]" (*Fisher*, *supra*, 172 Cal.App.4th at p. 1016; see also *In re Qawi*, at pp. 21, 27-28, fn. 7.) The acts specified in Welfare and Institutions Code section 5300 include attempting to inflict or inflicting "physical harm upon the person of another," and making "serious threat[s] of substantial physical harm upon the person of another." (§ 5300; *In re Qawi*, at pp. 27-28, fn. 7.)

Under these controlling standards, the criminal offenses that lead to Palmer's initial commitment (criminal threats and brandishing an imitation firearm at a group of teenagers) may be used on a future application to establish the demonstrated dangerousness element, but Palmer does not challenge the sufficiency of the evidence to support this element. As for the recent dangerousness element, the foregoing standards prevent the prosecutor from using the same evidence on any future application. The trial court issued the expired order on June 1, 2012, based on conduct that included Palmer punching another patient in February 2012, threatening to do it again if given the chance, and Palmer's numerous threats to physically harm hospital staff. The prosecution may not use evidence regarding these events to establish the recent dangerousness element on any future application because the events necessarily occurred more than one year before any future application. (*Fisher*, *supra*, 172 Cal.App.4th at p. 1016 [acts showing recent dangerousness must occur "'within the year prior to the commitment or

8

recommitment'"].)  Accordingly, whether the prosecution's evidence of these acts constituted substantial evidence of recent dangerousness is not likely to recur.

Indeed, Palmer fails to identify any specific issue regarding the expired order that is likely to recur or otherwise involves an important public interest.  On the merits, Palmer concedes he punched a patient in February 2012, and does not dispute he threatened hospital staff on several occasions.  (*Fisher*, *supra*, 172 Cal.App.4th at pp. 1016-1017 [substantial evidence of dangerousness existed because the evidence showed "that during his commitment appellant threatened physical violence, masturbated in front of female staff, and took papers from staff and threw them on the floor, becoming physically threatening"].)  Instead, Palmer argues he has "rarely harmed anyone" and his erratic behavior "almost never translated into any actual harm to others."  According to Palmer, the foregoing events occurred despite a previous involuntary medication order and therefore he should be given the opportunity to demonstrate he can behave without an involuntary medication order.  This argument misstates the controlling standards because the court must decide any future application based on the evidence presented on that application, not the evidence supporting any earlier order.  In sum, Palmer presents no issue that justifies exercising our discretion to decide a moot appeal on the merits.

Palmer argues "[n]umerous courts have found that MDO appeals present issues of public interest which are not to be dismissed as moot, because the issues are 'capable of repetition yet evading review.'"  The appellate courts did not reach those issues merely because the appeals were in MDO cases or because the orders at issue often expired before the court reviewed the merits.  Rather, the courts addressed the merits because the specific issues presented important and recurring claims which affected the trial court's jurisdiction to hear the cases or the governing procedures for all MDO cases.  As explained above, Palmer fails to raise an issue requiring us to hear his moot appeal.

III

DISPOSITION

The appeal is dismissed as moot.


ARONSON, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


BEDSWORTH, J.